**15-3777-cv**
**DS-Rendite v. Essar Capital Americas et al.**

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2016

(Submitted: October 28, 2016        Decided: February 6, 2018)

Docket No.  15-3777-cv

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DS-RENDITE FONDS NR. 108 VLCC ASHNA GMBH & CO TANKSCHIFF KG,
     Plaintiff-Appellant,

     v.

ESSAR CAPITAL AMERICAS INC., ESSAR CAPITAL LLC, ESSAR GROUP LLC,
ESSAR MINERALS, INC., ESSAR STEEL ALGOMA INC., ESSAR TRADING
INC.,
     Garnishees-Appellees,

and

ENERGY TRANSPORTATION INTERNATIONAL LIMITED, ESSAR SHIPPING
LIMITED, ESSAR SHIPPING AND LOGISTICS LIMITED,
     Defendants-Appellees.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

B e f o r e:  KATZMANN, Chief Judge, WINTER, and RAGGI, Circuit Judges.

     Appeal from a denial by the United States District Court for the Southern

District of New York (George B. Daniels, Judge), of appellant's motion for a

maritime attachment and garnishment under Rule B of the Supplemental Rules

for Admiralty or Maritime Claims and Asset Forfeiture Actions.  We affirm.

J. Stephen Simms, Simms Showers LLP, Baltimore, MD, <u>for</u> <u>Plaintiff-Appellant</u>.[1]

WINTER, <u>Circuit</u> <u>Judge</u>:

DS-Rendite Fonds Nr. 108 VLCC Ashna GmbH & Co Tankschiff KG ("DS-Rendite") appeals from Judge Daniels's denial of its motion for an attachment and garnishment order under Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.  We affirm.

## BACKGROUND

We assume that the facts alleged in the underlying complaint are true. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009); <u>Transfield ER Cape Ltd. v. Indus. Carriers, Inc.</u>, 571 F.3d 221, 222 (2d Cir. 2009) (recognizing "[b]ecause maritime attachments are granted on the pleadings, we assume all allegations in the complaint to be true" (internal quotation marks omitted)).  On or about November 2, 2009, DS-Rendite chartered the M/T Ashna to Energy Transportation International Limited ("ETIL") pursuant to a Time Charter ("Charter").  That same day, Essar Shipping Limited ("ESL") entered into a

---

[1] Appellees have not entered an appearance in this case.

novation agreement assuming the obligations of ETIL in the event ETIL defaulted on the Charter. Approximately five years later, Essar Shipping and Logistics Limited ("ESLL")[2] guaranteed the obligations of ETIL and ESL arising under the Charter. ESLL also agreed to guarantee subsequent settlement agreements between DS-Rendite, ETIL, and ESL resulting from ETIL and ESL's alleged failure to pay the charter-hire costs due under the Charter. DS-Rendite then made "repeated demand[s]" for payment. App'x at 12.

Appellant's complaint asserted a claim for breach of a maritime contract against appellees ETIL, ESL, and ESLL and simultaneously sought a maritime attachment and garnishment order against Essar Capital Americas Inc., Essar Capital LLC, Essar Group LLC, Essar Minerals, Inc., Essar Steel Algoma Inc., and Essar Trading Inc. (collectively "Garnishees") in the amount of $10,586,346.63. On September 8, 2015, the district court denied the motion for attachment. After the district court's denial of a motion for reconsideration, this appeal followed.

**DISCUSSION**

This is a classic <u>quasi</u> <u>in</u> <u>rem</u> proceeding. The plaintiff is seeking to assert a claim against a defendant, over whom the court does not (otherwise) have

---

[2] Appellant's complaint refers to "ESSL" as guaranteeing ETIL and ESL's obligations, App'x at 12, but we assume that it means "ESLL."

3

personal jurisdiction, by seizing property of the defendant (alleged here to be in the hands of a third party). Although Rule B states that it applies to "an <u>in personam</u> action," Fed. R. Civ. P. Supp. R. B(1), a maritime <u>in personam</u> claim is more appropriately styled a <u>quasi in rem</u> action. "[T]he nature of the jurisdiction the court acquires by a Rule B attachment is properly denominated 'quasi in rem' because any judgment rendered is limited to the value of the attached property." <u>Teyseer Cement Co. v. Halla Mar. Corp.</u>, 794 F.2d 472, 477 (9th Cir. 1986); <u>see</u> <u>Maryland Tuna Corp. v. MS Benares</u>, 429 F.2d 307, 311 (2d Cir. 1970) (action brought under Rule B is <u>quasi in rem</u>); <u>Eng'g Equip. Co. v. S.S. Selene</u>, 446 F. Supp. 706, 709 n.9 (S.D.N.Y. 1978) (same). In fact, Rule E, which governs <u>quasi in rem</u> actions, "applies to actions <u>in personam</u> with process of maritime attachment and garnishment." Fed. R. Civ. P. Supp. R. E(1); <u>see</u> Peter Friedenberg, <u>The Use of Maritime Attachment as a Jurisdictional Device</u>, 12 Cornell Int'l L.J. 329, 332 (1979) ("It should be emphasized that, despite the language in Rule B limiting its scope to claims brought <u>in personam</u>, the Rule is in fact a classic example of <u>quasi in rem</u> jurisdiction." (internal quotation marks omitted)).

The concept of quasi in rem jurisdiction evolved in the Lord Mayor's Court in London and "served the useful purpose of mitigating the rigors of securing personal jurisdiction" over elusive defendants. Paul D. Carrington, The Modern Utility of Quasi in Rem Jurisdiction, 76 Harv. L. Rev. 303, 304-05 (1962). In a quasi in rem proceeding, "a thing owned by a specified person is seized as a basis for exercising jurisdiction to decide a claim against the owner." Restatement (Second) of Judgments § 6 cmt. a (1982).

The quasi in rem device has proved particularly useful in admiralty, where defendants are so often transitory that the "process of foreign attachment is known of old in admiralty." Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A., 339 U.S. 684, 693 (1950). Without the use of maritime attachment to provide jurisdiction over defendants' properties, many plaintiffs would not be compensated for meritorious claims, see id. (citing Manro v. Almeida, 23 U.S. 473, 489 (1825)), and international commerce would be diminished. The quasi in rem device, in modern form, is now provided by Rule B.

In a Rule B proceeding, "the res is the only means by which a court can obtain jurisdiction over the defendant." Shipping Corp. of India v. Jaldhi Overseas Pte Ltd., 585 F.3d 58, 69 (2d Cir. 2009). So, "[o]nce that property or its

5

substitute security is released, the court has no jurisdiction over the defendant."

Teyseer, 794 F.2d at 477; cf. The Rock Island Bridge, 73 U.S. 213, 215 (1867) ("The lien and the proceeding in rem are, therefore, correlative -- where one exists, the other can be taken, and not otherwise."); see generally Gilmore & Black, The Law of Admiralty 622 (2d ed. 1975). If a plaintiff is not able to successfully attach the defendant's property under Rule B, the district court lacks jurisdiction over the defendant. Indeed, if the defendant is subject to typical in personam jurisdiction, Rule B cannot be used. STX Panocean (UK) Co. v. Glory Wealth Shipping Pte Ltd., 560 F.3d 127, 130-31 (2d Cir. 2009). At stake in this appeal, therefore, is not only the availability of property to satisfy any judgment that might be entered but also jurisdiction over a defendant to adjudicate a judgment.

With regard to the standard of review, existing case law in this circuit relates only to removal of Rule B attachments. See India S.S. Co. v. Kobil Petroleum Ltd., 663 F.3d 118, 121 (2d Cir. 2011); Jaldhi, 585 F.3d at 66. That established standard is that removal is reviewed under an abuse of discretion standard. We see no reason why this standard should not apply to the grant or denial of Rule B attachments as well. Of course, findings of adjudicative facts found in a Rule E hearing are reviewed for clear error, while conclusions of law

are reviewed de novo.  Allied. Mar., Inc. v. Descatrade SA, 620 F.3d 70, 74 (2d Cir. 2010); see Man Ferrostaal, Inc. v. M/V Akili, 704 F.3d 77, 82 (2d Cir. 2012). However, where the ultimate judgment involves the weighing and balancing of several factual and legal issues -- for example, the issuance of preliminary injunctive relief -- the standard of review is abuse of discretion.  See SG Cowen Sec. Corp. v. Messih, 224 F.3d 79, 81 (2d Cir. 2000).  Granting of a Rule B attachment, as discussed infra, whether on the pleadings or after a Rule E hearing requires such weighing and balancing.

To secure an ex parte order of attachment under Rule B, a plaintiff "bears the burden of establishing a right to attachment."  Jensen v. Rollinger, No. 13 Civ. 1095 (DAE), 2014 WL 4539660, at *2 (W.D. Tex. Sept. 11, 2014).  The Rule requires the following showing.  First, a plaintiff must file a "verified complaint praying for attachment" and "an affidavit stating that, to the affiant's knowledge, or on information and belief, the defendant cannot be found within the district."  Fed. R. Civ. P. Supp. R. B(1)(a) and (b).  Second, the complaint "may contain a prayer for process to attach the defendant's tangible or intangible personal property -- up to the amount sued for -- in the hands of garnishees named in the process."  Id. at Supp. R. B(1)(a).  Finally, the district court must then "review the complaint

and affidavit and, if the conditions of . . . Rule B appear to exist, enter an order so stating and authorizing process of attachment and garnishment." Id. at Supp. R. B(1)(b).  If an attachment is ordered, "any person claiming an interest in [the attached property] shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted."  Id. at Supp. R. E(4)(f) ("Rule E hearing").

The issue in the present matter is whether appellant's complaint and affidavit make legally sufficient allegations that identifiable property of the defendants, tangible or intangible, is "in the hands of garnishees."  Id. at Supp. R. B(1)(a).  We conclude that the allegations are not sufficient.

As a general matter, the pleading requirements under Rule B are said to be easily met.  See Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 443 (2d Cir. 2006), overruled on other grounds by Shipping Corp. Of India Ltd. v. Jaldhi Overseas Pte Ltd., 585 F.3d 58 (2d Cir. 2009) ("Maritime parties are peripatetic, and their assets are often transitory   . . . [resulting in] a relatively broad maritime attachment rule, under which the attachment is quite easily obtained."); ContiChem LPG v. Parsons Shipping Co., 229 F.3d 426, 433–34 (2d Cir. 2000) (finding that to meet the Rule B requirements "little else [other than the

8

affidavit and complaint] is required and there need only be a hearing after the attachment is served").

However, there are limits to the ease of attachment under Rule B. An existing attachment order is not valid where the attachment and garnishment is "served before the garnishee comes into possession of the property," Reibor Int'l Ltd. v. Cargo Carriers (KACZ–CO.) Ltd., 759 F.2d 262, 263 (2d Cir. 1985) (affirming the vacatur of an attachment order), or where the garnishees do not "owe[] a debt to the defendant at the time the order is served." ContiChem, 229 F.3d at 434 (citing Reibor, 759 F.2d at 266) (same).

Courts have also recognized the need for limits to prevent abuse. See Maersk, Inc. v. Neewra, Inc., 443 F. Supp. 2d 519, 527 (S.D.N.Y. 2006)("The ease with which a prima facie case for attachment can be made . . . creates a real risk of abusive use of the maritime remedy.") (citation, alteration, and internal quotations omitted). As a result, district courts have often initially granted attachment and then used Rule E hearings to determine whether the requirements of Rule B were in fact met. See, e.g., Transportes Navieros y Terrestres S.A. de C.V. v. Fairmount Heavy Transp., N.V., 572 F.3d 96, 100-03 (2d

9

Cir. 2009); Aqua Stoli, 460 F.3d at 438; Tide Line, Inc. v. Eastrade Commodities, Inc., 2007 A.M.C. 252, 260-61 (S.D.N.Y. 2006).

In recent years, moreover, perhaps in response to motions for broad attachments based entirely on conclusory allegations as to the property to be attached, district courts have required a minimal specificity of factual allegations identifying the defendant's property to be attached before issuing Rule B attachments and holding Rule E hearings. See Marco Polo Shipping Co. Pte. v. Supakit Prod. Co., 2009 A.M.C. 639, 641 (S.D.N.Y. 2009); see also Optimum Shipping & Trading S.A. v. Prestige Marine Servs. PTE. Ltd., No. 08 Civ. 9533 (JSR), 2010 WL 3469542, at *1 (S.D.N.Y. Aug. 24, 2010); DBCN v. Enersur S.A., No. 09 Civ. 8359 (RJS), 2009 WL 3254447, at *2–3 (S.D.N.Y. Oct. 9, 2009); Deval Denizcilik Ve Ticaret A.S. v. Sensy Freeight SRL, No. 09 Civ. 7314 (LAK), 2009 WL 2633661, at *2–3 (S.D.N.Y. Aug. 26, 2009); Arctic Ocean Int'l, Ltd. v. High Seas Shipping Ltd., 622 F. Supp. 2d 46, 52 (S.D.N.Y. Mar. 30, 2009); Peninsula Petroleum Ltd. v. New Econ Line PTE Ltd., No. 09 Civ. 1375 (PGG), 2009 WL 702840, at *3 (S.D.N.Y. Mar. 17, 2009) (adopting the "reasoning and holding of Marco Polo").

*Marco Polo* held that a plaintiff seeking to maintain an existing Rule B attachment "must at least set forth enough facts to render it plausible that the defendant's funds [are] present in the district." *Marco Polo*, 2009 A.M.C. at 641. In applying this standard, courts have held that "[m]ore is required to demonstrate a 'plausible' entitlement to a maritime attachment than . . . conclusory allegations." *Peninsula Petroleum*, 2009 WL 702840, at *2 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Specifically, a plaintiff must allege facts showing "that it is plausible to believe that Defendant's property will be 'in the hands of' garnishees in the Southern District of New York at the time the requested writ of attachment is served or during the time that service is effected." *Id.* To meet that standard some identification of the "property" is needed.

Neither Rule B nor Rule E provide pleading standards regarding the identification of the property to be attached and garnished. Each rule seems to assume that at least the nature of the property is known. We agree with the application of *Twombly* standards to the identification of the property to be attached under Rule B. *See Twombly*, 550 U.S. at 570 (requiring plaintiffs to plead "enough facts to state a claim to relief that is plausible on its face"). In

11

order to render the garnishee's possession of identifiable property of the defendant plausible, the facts alleged must provide sufficient specificity either as to the nature of the business relationship between the garnishee(s) and the defendant and/or the nature of the defendant's property subject to the attachment.

The present complaint fails to meet that standard. It alleges only in entirely conclusory fashion that the alleged garnishees do business with the defendants. The complaint alleges that "[e]ach of the Garnishees, on information and belief, holds property of Essar," namely "funds held by . . . Garnishee[s] which are due and owing to Defendants." App'x at 11, 13. The district court denied the motion for attachment, finding that these entirely conclusory allegations "d[id] not provide a sufficient basis to conclude that there are attachable assets in this District." Id. at 22.

When DS-Rendite moved for reconsideration, its brief in support of the motion contained new factual allegations.[3] The brief stated that "Essar Group," an entity nowhere mentioned in the complaint, "is an indisputably large

---

[3] For the sake of efficiency, we assume the allegations contained only in appellant's briefs and not in their complaint are properly before us. They are not. See Puglisi v. United States, 586 F.3d 209, 217-18 (2d Cir. 2009); Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998).

multinational corporation with thousands of affiliates and subsidies." Id. at 28. "Furthermore," appellant contended, "given that Defendants are subsidiaries or affiliates of Essar Group, and the Garnishees are also subsidiaries or affiliates of Essar Group, it is highly likely that the Garnishees owe money to Defendants, and thus have attachable assets within this District." Id.[4] The district court found that these assertions also failed to "sufficiently allege[] that Defendants are entitled to a debt owed by the Garnishees." Id. at 35.

We agree. The complaint's caption lists six companies as garnishees but nowhere alleges facts about the commercial ventures of the garnishees or their business relationships, much less transactions with the three companies named as defendants. Id. at 10. Instead, the complaint states only in conclusory terms that "[e]ach of the Garnishees, on information and belief, holds property of Essar," but does not allege facts explaining why any one of those six companies would hold property of "Essar," which is actually three separate companies. Id. at 11.

---

[4] In a footnote, DS-Rendite revealed the paucity of its allegations by stating: "For instance, Garnishee Essar Steel Algoma, Inc. actively engages in business transactions with Essar Group affiliate, Essar Steel Minnesota LLC," another company nowhere mentioned in the complaint, and "[t]hus, it is more than likely that the similar Essar Group affiliates interact similarly in transacting business with other Essar Group affiliates." App'x at 28 n.2.

Even assuming arguendo that, as a general matter, the defendants and garnishees are somehow "affiliates or subsidiaries" of the same "group" -- an allegation, as noted supra, absent from appellant's complaint -- it does not follow that there is a specific entitlement of one of the defendants to a debt owed by a garnishee, see Alaska Reefer Mgmt. LLC v. Network Shipping Ltd., 68 F. Supp. 3d 383, 387 (S.D.N.Y. 2014), much less a debt that would be in the possession of the garnishee "at the time the order is served," ContiChem, 229 F.3d at 434. As the district courts found in DBCN and Deval Denizcilik, entitlement to an attachment must be based on more than "a conclusory allegation that, on the basis of general industry practices, it is anticipated and expected that Defendants will have property in this District [in the possession] of . . . garnishees during the pendency of the requested order." DBCN, 2009 WL 3254447, at *2 (quotation marks omitted); see Deval Denizcilik, 2009 WL 2633661, at *2.

In Marco Polo, the Southern District likewise rejected the contention that "any likelihood short of impossibility that the defendant's funds could be restrained in the future is sufficient to meet the requirement that the defendant's property be found within the district." 2009 A.M.C. at 641. In that regard, we note that DS-Rendite fails to allege facts that defendants have ever transferred

14

funds through New York -- from garnishees or otherwise. <u>See</u> <u>Peninsula</u> <u>Petroleum</u>, 2009 WL 702840, at *2 (citing cases in this circuit in which plaintiff's allegations met the plausibility standard).

While the availability of a swift Rule E hearing may, in a district court's discretion, allow room for a relaxed pleading standard with regard to an attachment, the pleading must provide targeted guidance as to the property that is the subject of the hearing. As appellant's district court brief in support of the motion for reconsideration made clear by presenting new factual allegations not pleaded in the complaint, <u>see</u> Note 4, <u>supra</u>, a Rule E hearing in this matter would have no focus and be little more than a prolonged fishing expedition.

**CONCLUSION**

For the reasons stated above, it was within the district court's discretion to deny appellant's motion for an order of maritime attachment and garnishment. Should appellant wish to renew its application, appellant may file a complaint and motion according to the standards set forth in this opinion. We affirm.